UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JUDITH WALTON, as Personal
Representative for the ESTATE
OF FRANK SMITH, on behalf of the
Estate and Survivor Judith Walton,

            Plaintiff,

v.                                                    Case No. 3:16-cv-1130-J-39JRK

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

            Defendants.
_____

## ORDER

### I. Status

Plaintiff is proceeding in this action as the personal representative for the estate of

Frank Smith, Plaintiff's son, who was an inmate of the Florida penal system. Plaintiff,

represented by counsel, is proceeding on a Second Amended Complaint (Doc. 33;

Complaint), asserting, on behalf of Smith's estate and survivors, that Smith's

constitutional rights were violated while he was in custody of the Florida Department of

Corrections (FDOC). Plaintiff filed her original complaint on September 6, 2016 (Doc. 1).

Plaintiff names as defendants the FDOC, Warden Barry Reddish, Nan Jeffcoat, Lt.

Joseph Allen, Capt. Wilfred Ellis, Capt. Shawn Swain, Lt. Terry Bacon, Sgt. Rodney

Criswell, Sgt. Brandi Griffis, Officer Brian Norman, Officer Shalen Browning, Officer

Michael Shaffer, and Officer Dustin Hough. All Defendants except one have filed motions

to dismiss the Second Amended Complaint (Docs. 34, 35, 36; Motions). Defendant Ellis,

who recently filed an Answer (Doc. 41), has not moved to dismiss the Complaint. (Doc.

41). Plaintiff has filed a response to the Motions (Doc.37; Response), which are now ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.  Ashcroft v.Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. A plaintiff must meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).

The plaintiff must allege "enough facts to state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A Court may properly dismiss a complaint for failure to comply with the applicable limitations period when "it is apparent from the face of the complaint that the claim is time-barred." Baker v. City of Hollywood, 391 F. App'x 819, 820 (11th Cir. 2010) (citing La Grasta v. First Union Secs., Inc., 358 F.3d 840, 845 (11th Cir. 2004)).

## III. Complaint Allegations

Plaintiff alleges Defendants deprived Smith of his constitutional rights with respect to an incident that occurred on July 3, 2012. On that day, Smith was an inmate at Union Correctional Institution (UCI), and officers were transporting him from a hospital in

Gainesville, FL, back to UCI. Complaint at 4. According to Plaintiff, on July 3, 2012, officers used excessive force against Smith both in the transport vehicle and upon return to UCI (the movement center). Id. at 4, 6. Specifically, Plaintiff alleges that, during transport, Defendant Criswell pulled the van to the side of the road after Smith banged his head on the compartment divider and kicked a window, breaking the glass. Id. at 4-5. Defendant Criswell entered the van's passenger compartment and then "used his Taser on Smith and struck him repeatedly." Id. at 6. Upon return to the movement center, according to Plaintiff, Defendants failed to properly care for Smith, failed to timely call paramedics, and improperly moved Smith using a wheelchair rather than a stretcher even though Smith was unconscious. Id. at 7-9. Plaintiff further alleges that Smith was "battered" while at the movement center. Id. at 15. With respect to individual Defendants, Plaintiff alleges some were directly involved in beating and physically harming Smith, while others failed to intervene or were deliberately indifferent to a history of abuse against inmates and with respect to this particular incident. Id. at 15-18.

A paramedic allegedly concluded that Smith's injuries appeared more consistent with a car accident victim or someone who fell down a set of stairs. Id. at 9. As a result of the use of force, "Smith received paralyzing blunt force injuries to his head and neck." Unfortunately, Smith died two months later, on September 4, 2012, allegedly as a result of complications related to the injuries. Id. at 4. The medical examiner's autopsy revealed "multiple visible abrasions, lacerations, edemas and contusions of the legs, groin, midsection, and head." Id. at 12. Smith's cause of death was noted to be "complications of blunt head injuries," which Plaintiff attributes directly to the Defendants' acts or omissions on July 3, 2012. Id. at 12.

Plaintiff asserts four counts, all arising out of the conduct alleged to have occurred on July 3, 2012. Id. at 1. Counts I through III assert claims under § 1983 for the violation of Smith's constitutional rights. Count I alleges excessive use of force and a failure to protect or intervene as to Defendants Criswell, Hough, Schaffer, Allen, Norman, Griffis, and Browning. Id. at 15. Count II alleges deliberate indifference as to Defendants Reddish, Jeffcoat,[1] Ellis, Swain, Allen, and Bacon. Id. at 17. Count III alleges conspiracy to deprive Smith of his constitutional rights as to all Defendants. Id. at 19. Count IV alleges violations of the ADA and Rehabilitation Act as to Defendant FDOC, alleging Smith was disabled and Defendant FDOC failed to provide reasonable accommodations for Smith, which resulted in his injury and death.[2] Id. at 20.

With respect to the conspiracy claim, Plaintiff alleges Defendants[3] conspired to beat Smith, who allegedly suffered from an unspecified mental illness. Id. at 4, 19. According to Plaintiff, Defendants not only conspired to harm Smith, but agreed to an elaborate plan to delay medical treatment, delay disclosure of the incident to investigators, hide or destroy evidence, and to conceal any wrongdoing. Id. at 19. The denial of immediate medical care allegedly "exposed [Smith] to undue suffering and an untimely and unnecessary death." Id. at 12. Plaintiff alleges the FDOC investigator first learned of the incident about five to six hours after it happened. Plaintiff maintains that Smith lost consciousness at some point on the day of the incident, id., though, apparently while he was conscious, "[t]he officers involved in the force . . . threatened Smith with

---

[1] Plaintiff has stipulated to the dismissal of claims against Defendant Jeffcoat. See Response at 18.
[2] It is unclear how Smith's alleged mental illness played a role in the incident that occurred on July 3, 2012, other than vague allegations that Defendant Criswell had abused Smith in the past because of his mental illness, and the FDOC failed to establish policies for managing inmates with mental illness without resorting to use of force. See Complaint at 4, 22.
[3] Plaintiff clarifies in her Response that she intended to name only the individual Defendants in this Count. See Response at 12 n.5.

severe injury or death if he told what happened." Id. at 11. As relief, Plaintiff seeks damages on behalf of Smith's estate and on behalf of the survivors for their loss of support and pain and suffering resulting from Smith's death.

## IV. Defendants' Motions and Plaintiff's Response

Defendants assert various defenses: failure to state a claim, qualified immunity, application of the intracorporate conspiracy doctrine, and failure to timely file the Complaint within the applicable statute of limitations. See Motions. With respect to the statute of limitations defense, Defendants maintain the applicable four-year statute of limitations accrued on the date of the incident, July 3, 2012. According to Defendants, the filing of the original complaint on September 6, 2016, falls well outside the statutory period. See Doc. 34 at 13; Doc. 35 at 5; Doc. 36 at 8.[4] Some Defendants also assert that Florida law bars Plaintiff's claims because the injuries to Smith resulted in his death. Under Florida law, claims for injuries resulting in death do not survive; instead, when death results, a distinct cause of action may proceed in favor of the survivors, as a wrongful death claim. See Motion (Doc. 35) at 4-5.

In response to the statute of limitations defense, Plaintiff agrees that her claims are governed by a four-year statutory period, but maintains that the accrual date is Smith's date of death, which was September 4, 2012,[5] citing Florida law. Response at 14. Plaintiff also asserts that she is entitled to application of the "delayed discovery" doctrine under Florida law. Id. at 15. Plaintiff does not address why Smith's date of death governs the

---

[4] Document 36 lacks pagination. Page numbers reflect the pagination assigned by the Court's CM/ECF docketing system, which are found at the top of each page.

[5] Plaintiff asserts, and this Court takes notice, that September 4, 2016 was a Sunday, with the following Monday being Labor Day. Response at 14. Thus, if the statute of limitations for Plaintiff's claims accrued on Smith's date of death, the Complaint was timely filed on the next business day following September 4, 2016, which was September 6, 2016.

accrual of the action and only responds to Defendants' asserted accrual date in a footnote, saying that the Defendants' "theory has no possible justification." Id. at 14 n.6.

## V. Law and Conclusions

Defendants' argument with respect to the accrual date indeed has justification, at least as to Counts I, II, and IV. As a preliminary matter, the parties do not dispute that a four-year limitations period, imported from Florida law as the forum state, governs the claims. See Doc. 34 at 13; Doc. 35 at 5; Doc. 36 at 8; Response at 14. The Supreme Court has held that because § 1983 does not set forth a limitations period, the courts are to adopt the forum state's residual personal injury statute of limitations. Owens v. Okure, 488 U.S. 235, 236 (1989) (stressing a goal of consistency and recognizing that "narrow analogies" to state law bred confusion and inconsistency in the application of the federal law); see also Wallace v. Kato, 549 U.S. 384, 387 (2007). The ADA also does not identify a limitations period; thus, Florida's four-year statutory period applies. Silva v. Baptist Heath So. Fla., Inc., 856 F.3d 824, 841 (11th Cir. 2017) (citing Fla. Stat. § 95.11(3)).

Section 1983 and the ADA are silent as to whether a person's claims survive death. Thus, federal courts apply state substantive law to the extent necessary to "fill a gap," per the federal statutory framework provided by § 1988. See Robertson v. Wegmann, 436 U.S. 584, 588 (1978) (recognizing that, when federal statutes are insufficient in addressing specific remedies, the applicable forum state's laws are imported to the extent not inconsistent with federal laws); United States v. NEC Corp., 11 F.3d 136, 137, 139 (11th Cir. 1993) (recognizing that claims based on remedial statutes survive death where the forum state's law permits recovery for wrongful death); see also Brazier v. Cherry, 293 F.2d 401, 408-09 (5th Cir. 1961).

Section 1988 provides the following:

> The jurisdiction in civil and criminal matters conferred on the district courts . . . for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts . . . .

42 U.S.C. § 1988.

Reference to a state law to fill the survival gap does not add to a substantive right, but "merely assures that there will be a remedy" when there is a civil rights violation resulting in death. Brazier, 293 F.2d at 408-09. In Brazier, the former Fifth Circuit held that § 1988 provides the federal framework through which the "survival gap" in § 1983 is addressed. Id. at 407. Specifically, the court held that because Georgia state law permitted a decedent's survivors and the estate to seek damages, the decedent's death gave rise "to a federally enforceable claim for damages." Id. at 402, 409. Because Georgia law provided for both survival and wrongful death claims, the court found it unnecessary to "differentiate between the two types of actions" in formulating a remedy in furtherance of the policy of the Civil Rights Statutes. Id. at 409. See also Carringer v. Rodgers, 331 F.3d 844, 849-50 (11th Cir. 2003) (holding a decedent's parent had standing, under Georgia state law, to bring a claim under § 1983 "for the wrongful death of her son in violation of his constitutional rights"); Jaco v. Bloechle, 739 F.2d 239, 242 (6th Cir. 1984) (holding a mother, as personal representative of her son's estate, was permitted to "champion her dead son's civil rights" through a § 1983 action).

The Eleventh Circuit has not directly addressed whether a civil rights action survives a decedent's death when Florida is the forum state. However, our sister court has engaged in a thorough analysis of this question. See Sharbaugh v. Beaudry, 267 F. Supp. 3d 1326, 1334-35 (N.D. Fla. 2017). The Northern District held that Florida's Wrongful Death Act (WDA) "fills the survival gap," because it "provides a meaningful remedy" in § 1983 actions alleging violation of one's constitutional rights that resulted in wrongful death. Id. at 1335. While Florida's comprehensive WDA does not permit recovery for a decedent's pain and suffering when injury results in death, it does permit recovery of pain and suffering damages in favor of the survivors. In other words, the court recognized, a decedent's damages are "transferred" to the survivors. Id. at 1334. See also Martin v. United Sec. Svcs., Inc., 314 So. 2d 765, 767 (Fla. 1975) ("Florida Statutes . . . consolidate survival and wrongful death actions and substitute for a decedent's pain and suffering the survivors' pain and suffering as an element of damages."); Capone v. Philip Morris USA, Inc., 116 So. 3d 363, 375 (Fla. 2013) (explaining that Florida's WDA "implemented a process of substitution" with respect to recovery of damages when a decedent's injuries cause his death).

It is clear from a review of relevant federal law and the policies underlying § 1983 that Plaintiff's estate may assert a claim for the violation of Smith's civil rights.[6] Even though the Florida WDA does not provide for survival of actions where the injury results in death, the federal courts have recognized that § 1983 claims survive where state law generally permits an estate or a personal representative to bring actions on behalf of a decedent and survivors, whether in the form of a wrongful death claim or a true survival

---

[6] This includes Plaintiff's claim in Count IV, under the ADA, which also survives Smith's death. See NEC Corp., 11 F.3d at 137, 139.

claim. See Carringer, 331 F.3d at 849-50; Brazier, 293 F.2d at 408-09. The next inquiry, then, and a point of contention between the parties, is when the statute of limitations accrues when a personal representative asserts federal claims for the violations of decedent's civil rights resulting in wrongful death. While the forum state's law controls with respect to the length of a limitations period, the same is not true with respect to the accrual of a cause of action. Accrual of federal actions is governed solely by reference to federal law. Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987) ("[I]n Section 1983 actions '[o]nly the length of the limitations period, and the closely related questions of tolling and application, are to be governed by state law.'" (emphasis and alteration in original) (citing Wilson v. Garcia, 471 U.S. 261, 269 (1985)); see also McGinley v. Mauriello, 682 F. App'x 868, 871 (11th Cir. 2017) (recognizing that claim accrual is determined as a matter of federal law); Ross v. Mickle, 194 F. App'x 742, 744 (11th Cir. 2006) ("Federal law . . . determines when the statute of limitations begins to run.") (citing Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003)).

Under federal law, actions brought pursuant to § 1983 and the ADA accrue, or begin to run, "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Ross, 194 F. App'x at 744. Stated another way, once a person knows or has reason to know of an injury and knows who inflicted the injury, the statute of limitations begins to run as to the claims that may be available to that person. Horsely v. Univ. of Ala., 564 F. App'x 1006, 1008 (11th Cir. 2014) (citing Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003)). "This rule requires a court first to identify the alleged injuries, and then to determine when plaintiff[] could have sued for them." Rozar v. Mullis, 85 F.3d 556, 562 (11th Cir. 1996). The injuries alleged here are those resulting from the excessive use of

force against Smith, and are brought under § 1983[7] and the ADA[8]. A determination of when Plaintiff (or here, Smith) could have sued for these injuries is dictated by the nature of the federal claims asserted.

A claim premised on excessive use of force accrues at the time the alleged force was used. Baker v. City of Hollywood, 391 F. App'x 819, 821 (11th Cir. 2010) (affirming the district court's dismissal of plaintiff's claims premised on excessive force because, from the face of the complaint, it was apparent he filed it more than four years after the date he allegedly was beaten); Ross v. Mickle, 194 F. App'x 742, 744 (11th Cir. 2006) (holding the statute of limitations had run on plaintiff's excessive force claim, which accrued on the date plaintiff was shot in the back even though the plaintiff alleged defendants' conspiracy prevented him from learning the identity of the officer who shot him). See also Whitenight v. Pa. State Police, 674 F. App'x 142, 144 (3d Cir. 2017) (dismissing plaintiff's claim sua sponte because it was clear from the face of the complaint that plaintiff knew of his injuries more than two years before he filed his complaint); Love v. City of New Brunswick, No. 16-2586, 2018 WL 429247, at *5 (D.N.J. Jan. 16, 2018) (noting that the date of injury typically starts the statutory period where "the fact of injury . . . would be recognized by a reasonable person"). Similarly, an ADA claim accrues when the plaintiff knows of an injury resulting from a failure to accommodate. Horsely, 564 F. App'x at 1009.

---

[7] To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted).
[8] "[T]o state a Title II claim, a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against . . . ; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007).

The alleged injured party here was Smith. As the victim, Smith knew or should have known of the alleged use of force when it occurred on July 3, 2012. To the extent Plaintiff claims the denied accommodation is related to events that occurred on July 3, 2012, when Defendants allegedly used excessive force against Smith, the same date governs all claims. In any event, with respect to the ADA claim, Smith should have known of an injury resulting from the denial of accommodations for any alleged disability during the time he was incarcerated at UCI, or on or before July 3, 2012. Thus, Plaintiff's complaint, filed on September 6, 2016, is untimely and, therefore, barred.

The distinction between federal claims premised on a violation of Smith's constitutional rights and state law claims for wrongful death inuring to the benefit of the estate is of paramount significance with respect to the accrual of Plaintiff's claims. While not binding, the Tenth Circuit has recently addressed the narrow question presented here, and this Court finds its rationale persuasive. See Lawson v. Okmulgee Cty. Crim. Justice Auth., No. 16-7070, 2018 WL 1104553, at 4-5 (10th Cir. Feb. 28, 2018). In Lawson, the personal representative of a former inmate, who died of cancer while incarcerated, brought an action under § 1983 and a parallel state constitutional provision. The plaintiff asserted, on behalf of the deceased inmate, claims for cruel and unusual punishment through deliberate indifference to the inmate's medical needs. Id. at *1. The defendants moved to dismiss the complaint, in part because it was time-barred, and the district court granted the motions. Id. at *2. On appeal, the estate argued the limitations period accrued on the inmate's date of death, pursuant to the relevant state (Oklahoma) wrongful death law. Id. at *4.

The court disagreed, primarily because the estate was suing "in a purely representative capacity for alleged violations of [the inmate's] federal and state

11

constitutional rights." Id. Thus, the court held, the inmate's date of death did not control, but rather, the controlling date was that which would have applied had he himself filed the action, relying on the federal accrual rule. Id. The court specifically stated that "the estate is ignoring that [the personal representative] is suing in a purely representative capacity . . . and has stepped into his shoes for all purposes." Id. (internal quotations and alterations omitted). See also Majors v. Gerlach, No. 16-13672, 2017 WL 35813321, at *4 (E.D. Mich. 2017) ("[I]t would be a perversion of the discovery rule to permit the decedent's representative a 'fresh start' at the statute of limitations when the decedent himself apparently had immediate notice of all facts necessary to bring a lawsuit.").

The Sixth Circuit has also recognized the limited extent to which state wrongful death and survival laws apply in the context of a § 1983 claim brought to "champion" the rights of a decedent. See Jaco v. Bloechle, 739 F.2d 239, 242 (6th Cir. 1984). In Jaco, the court recognized that "a § 1983 cause of action, by virtue of the explicit language of the section itself, is a personal action cognizable only by the party whose civil rights had been violated." Id. There, the court held that a mother, as personal representative of her son's estate, was permitted to proceed with a § 1983 claim in which she asserted violations of her son's civil rights, even though strict application of the forum state's wrongful death and survival laws would have resulted in dismissal of the claim.[9] Id. at 242, 254. In reaching this conclusion, the court distinguished between survival and wrongful death claims, stating the former is a claim personal to the decedent and the latter "inures to the benefit of the decedent's estate" as a result of injuries suffered by the estate

---

[9] Plaintiff could not state a survival claim because the decedent did not suffer pre-death; he was shot and instantly killed. She also could not maintain a state wrongful death claim in federal court, because she lacked standing to assert the rights of another under the state wrongful death law. Jaco, 739 F.2d at 242-43.

rather than the decedent. Id. at 242. The court concluded that a wrongful death claim

under state law was not the equivalent of the decedent's § 1983 claim, stating that "to

arbitrarily conclude that [the survivors'] injuries resulted from an infringement of their civil

rights would be sheer obfuscation of the issue." Id. at 242-43 (emphasis added).

In a footnote, the court clarified even further why application of the state's wrongful

death law, in the context of the personal representative's claim resulting from infringement

of her son's civil rights, was not appropriate:

> [T]he claim of [decedent's] heirs under the wrongful death
> enactment is a cause of action separate from the civil rights
> claim and should have been treated as a state claim subject
> to the trial court's pendent jurisdiction. . . . Ohio's wrongful
> death enactment creates a cause of action—it is not a law
> regulating the survival of the decedent's legal claims.
> Because it is not adapted to the object of providing for the
> continuation of personal causes of action, the wrongful death
> statute is irrelevant to the § 1988 analysis imposed on this
> action by Robertson v. Wegmann, supra.

Id. at 243 n.5 (emphasis in original).

Florida law permits a personal representative to recover damages resulting from loss of

a decedent.[10] Like the situations presented in Jaco and Lawson, Plaintiff here has

asserted federal claims, alleging violations of her decedent's constitutional rights, in a

purely representative capacity. Thus, the outcome here should be the same as that

reached in Lawson with respect to the relevant date for accrual. In other words, the date

of accrual is the date of the alleged violations of the decedent's civil rights, and not the

date of death resulting from those violations. Smith's death, while untimely and certainly

unfortunate, was a consequential damage resulting from the alleged constitutional

violations, which occurred on July 3, 2012. The later consequential damage (death) does

---

[10] See Fla. Stat. §§ 46.021, 768.19, 768.20.

not "alter the commencement date." See Wallace, 549 U.S. at 390 ("Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.") (alteration in the original) (internal quotations omitted).

Even to the extent Plaintiff seeks relief that sounds in wrongful death (damages for the survivors),[11] that does not dictate that the Florida case law regarding accrual of a wrongful death action applies here. Most importantly, there is no gap in the relevant federal law with respect to accrual of actions. Thus, resort to the forum state's law with respect to this issue would be error. See 42 U.S.C. § 1988; Robertson, 436 U.S. at 589-90; Brazier, 293 F.2d at 408-09. While Florida's comprehensive WDA distinguishes between claims that survive death and claims that abate upon death, that distinction has no relevance in the context of a federal civil rights action brought to remedy the violations of a decedent's civil rights, even where those violations allegedly result in death. Indeed, the former Fifth Circuit has expressed that it is unnecessary to differentiate between a survival claim and a wrongful death claim, where both are permitted by state law and "both classes of victims" may recover. Brazier, 293 F.2d at 409. Even more, there is a clear distinction between a state wrongful death claim, which is governed by the state law, and a claim asserting violations of a decedent's civil rights under § 1983.

Importantly, Plaintiff has not stated a pendent wrongful death claim under Florida state law. (Indeed, Plaintiff does not reference Florida's WDA in her Complaint.) If she had, then, as she maintains, that cause of action would accrue on the date of Smith's

---

[11] In her Response, Plaintiff stresses that she seeks damages for the loss to Smith's estate and survivors, and not on behalf of Smith for his pain and suffering. Response at 14.

death, pursuant to Florida case law.[12] See McGinley, 682 F. App'x at 871 n.3 (noting a distinction between accrual of a wrongful death claim and accrual of a claim under § 1983 for denial of access to courts). Plaintiff also has not alleged denial of her own constitutional rights, such as denial of access to courts.[13] See Robertson, 436 U.S. at 592 n.9 (recognizing a distinction between rights asserted on behalf of the decedent and rights that may be asserted, under § 1983, on behalf of survivors "for injury to their own interests"); Robertson v. Hecksel, 420 F.3d 1254, 1261 (11th Cir. 2005) (distinguishing the plaintiff's claims, brought to remedy infringement of her alleged "liberty interest in a continued relationship with her adult son," which failed to state a cause of action, from the plaintiff's claims in Brazier, which sought a remedy for the violation of the decedent's constitutional rights); Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003) (stating that a claim for denial of access to courts may accrue at a different time from the underlying claim). Because Plaintiff has chosen to premise her claims on the alleged violations of Smith's constitutional rights, she is bound by the federal accrual rule. And, because the federal law squarely addresses accrual of causes of action—meaning, there is no "gap,"—there is no need to resort to application of the forum state law with respect to the date of accrual. See 42 U.S.C. § 1988; Robertson, 436 U.S. at 589-90; Brazier, 293 F.2d at 408-09.

---

[12] See Fulton Cnty. Adm'r v. Sullivan, 753 So. 2d 549, 552 (Fla. 1999) (recognizing that a wrongful death action under Florida law accrues on the date of death). Plaintiff likely did not pursue a wrongful death claim because the Florida wrongful death statute of limitations is much less generous (two years) and, as to the claim against the FDOC, she has not alleged compliance with the notice requirement provided in Florida Statutes section 768.28.

[13] Even though Plaintiff alleges that Defendants engaged in an elaborate plan to conceal alleged wrongdoing on the date of the incident, those allegations are included in support of the conspiracy claim under § 1983. Plaintiff has not alleged, nor does this Court read her Complaint to attempt to allege, that any concealment resulted in a denial of her access to the courts as to constitutional claims she may have asserted but could not because of Defendants' conduct.

To the extent any parts of the Florida WDA would apply with regard to Plaintiff's claims, it would be with regard to the measure of damages and not as to the accrual of her federal causes of action premised on her decedent's constitutional rights. Indeed, the Florida WDA did not completely abolish survival actions, but merely clarified the measure of damages available depending on the nature of the injury and on whose behalf the claim is filed.[14] See Sharbaugh, 267 F. Supp. 3d at 1335 (citing Martin, 314 So. 2d at 770) (recognizing that the Florida WDA was not to be interpreted "as a blanket abolition of survival actions for personal injuries resulting in death"); See also Gillmere v. City of Atlanta, Ga., 864 F.2d 734, 738, n.4 (11th Cir. 1989) (suggesting, without deciding, that application of the state wrongful death act may be appropriate with respect to the measure of damages in instances where the survivors seek damages for their own injuries resulting from a civil rights violation as to the decedent); Estate of Bashimam v. City of Tallahassee, No. 4:10cv343-RH/WCS, 2011 WL 13232538, at *2 (N.D. Fla. Mar. 11, 2011) (recognizing that a personal representative may pursue a claim for violation of a decedent's civil rights, under § 1983, and recover damages to the extent provided by Florida's wrongful death act).

The Court now must consider whether any tolling provision would apply given Plaintiff's contention, without factual support or analysis, that she should benefit from Florida's "delayed discovery" rule. See Response at 15. While the federal accrual rule applies to Plaintiff's claims, state law applies with respect to whether any tolling provisions are applicable. Mullinax, 817 F.2d at 716. Florida's delayed discovery rule does not apply to extend the accrual date as to Plaintiff's claims. According to Florida Statutes, only specific enumerated causes of action are subject to a discovery accrual date, as opposed

---

[14] See Fla. Stat. § 768.21.

to a strict time period beginning on the day of an identified act or omission. See Fla. Stat. § 95.11(4), (7) (providing a "discovery" calculation for actions asserting professional malpractice, medical malpractice, and intentional torts based on abuse of minors). See also Davis v. Monahan, 832 So. 2d 708, 710-11 (Fla. 2002) (holding Florida's delayed discovery rule is interpreted narrowly and only as to the claims enumerated by the legislature). See also Fla. Stat. Ann. § 95.051 (enumerating circumstances that will toll an applicable limitations period).

Plaintiff has not asserted an argument that Florida's "delayed discovery" rule applies, nor has she alleged facts suggesting that Smith's discovery of his action should have been delayed or tolled as permitted by Florida law. Indeed, Florida's "discovery" rule is similar to the applicable federal accrual rule, which dictates a cause of action accrues when the plaintiff knows or should know of an injury or action. Smith knew or should have known of his injury on July 3, 2012, when Defendants allegedly used excessive force resulting in Smith's unfortunate death two months later. The fact that Smith may have been unconscious at any point on the date of the incident does not permit tolling or delay of the statutory period under Florida law. See Fla. Stat. § 95.11; Fla. Stat. § 95.051.

The Court finds it clear from the face of the Complaint that Plaintiff's claims alleging excessive use of force, failure to intervene, deliberate indifference, and violation of the ADA (Counts I, II, and IV) are barred by the applicable four-year statute of limitations. Those claims accrued on July 3, 2012, which is the date that Smith knew or should have known of a violation of his constitutional rights. Thus, Plaintiff should have filed her claims no later than July 3, 2016, to be considered timely. Plaintiff filed her claims on September 6, 2016, over two months after the limitations period expired. With respect to the conspiracy claim alleged in Count III, the Court finds application of the statute of

limitations less clear. Specifically, it is unclear from the Complaint allegations when Smith

knew or should have known the Defendants engaged in a conspiracy to deprive him of

his constitutional rights.[15]

While the Court is unable to discern whether the statute of limitations has run on

the conspiracy claim (Count III), that is a question left for another day because Plaintiff

has failed to state a claim for conspiracy. See Fed. R. Civ. P. 12(b)(6). To properly state

a claim for conspiracy under § 1983, a plaintiff must allege, with specificity, that the

defendants reached an agreement to deny the plaintiff his constitutional rights, and that

defendants did, in fact, violate plaintiff's constitutional rights. Burge v. Ferguson, 619 F.

Supp. 2d 1225, 1237 (M.D. Fla. 2008). A court may properly dismiss a conspiracy claim

if it includes only conclusory allegations and does not contain specific facts to inform the

defendant "of the nature of the conspiracy alleged." Fullman v. Graddick, 739 F.2d 553,

556–57 (11th Cir. 1984). "A plaintiff claiming a § 1983 conspiracy must prove the

defendants 'reached an understanding' to violate the plaintiff's constitutional rights."

Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010). "[T]he linchpin for

conspiracy is agreement, which presupposes communication." Bailey v. Bd. of Cty.

Comm'rs of Alachua Cty., Fla., 956 F.2d 1112, 1122 (11th Cir. 1992)

Plaintiff here has done no more than generally aver the existence of a conspiracy,

both prior to the alleged use of force and in the hours following. See Complaint at 19-20.

This Court is unable to decipher the nature of the conspiracy, who was involved in the

conspiracy to harm Smith prior to the use of force, and who was involved in the conspiracy

to delay treatment, destroy evidence, delay medical care, and conceal wrongful acts.

---

[15] Not only are the facts unclear as alleged in the Complaint, the parties have failed to brief application of the statute of limitations to the conspiracy claim.

Indeed, Plaintiff's conspiracy claim, directed to all individual "Defendants" as a group, is rendered even more unclear when considered in the context of the general factual allegations, which are incorporated by reference. The general factual allegations delineate different groups of Defendants involved at different points in time on the day Smith allegedly was beaten. Plaintiff has not alleged specific facts indicating which Defendants, or which discrete groups of Defendants, reached an understanding to harm Smith. Plaintiff only states that "Defendants reached an implicit or explicit understanding." Complaint at 19. This vague statement, without reference to specific facts, is insufficient to put Defendants on notice of the nature of the claim against them.

Plaintiff's Complaint reads more like a "shotgun" pleading, "leaving the court with the cumbersome task of sifting through myriad" allegations (170 paragraphs) to identify facts that may support a conspiracy to harm Smith and deprive him of his constitutional rights. See Fullman, 739 F.2d at 556–57. Moreover, some of the assertions of the conspiracy against Smith do not rise to the level of a constitutional harm. While allegations of the excessive use of force, failure to intervene, and denial of medical care may rise to the level of constitutional violations, conclusory allegations of hiding and destroying evidence and delaying disclosure to investigators do not implicate Smith's constitutional rights or reasonably permit this Court to draw such an inference.

In light of the deficiencies with respect to the conspiracy claim, the Court will grant Plaintiff's request to amend her Complaint. See Response at 18. While Plaintiff's request to amend has not been asserted in a proper motion, the Court finds that amendment of the conspiracy claim is appropriate given the remaining claims are procedurally time-barred. Plaintiff is permitted to amend with respect to Count III only and not with respect to claims that are barred by the statute of limitations. In permitting this amendment, the

19

Court reaches no decision as to whether a properly-pled cause of action for conspiracy similarly may be barred by the statute of limitations.

Accordingly, it is

**ORDERED:**

1.      The Order to Show Cause (Doc. 38) is **DISCHARGED**. See Docs. 39, 41.

2.      The Court grants in part and denies in part Defendants' Motions to Dismiss.

a.      Counts I, II, and IV are **DISMISSED with prejudice** due to Plaintiff's failure to file those claims within the applicable statute of limitations.

b.      Count III is **DISMISSED without prejudice** due to Plaintiff's failure to state a claim upon which relief may be granted. To the extent Plaintiff chooses to amend this Count, she must do so by May 25, 2018.

3.      Defendants Jeffcoat and the FDOC are entitled to **DISMISSAL** from this action. Adjudication to that effect will be withheld pending adjudication of the case as a whole. See Fed. R. Civ. P. 54.

**DONE AND ORDERED** in Jacksonville, Florida, this 20th day of March, 2018.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6 3/20
c: Counsel of Record