UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JUDITH WALTON, as Personal
Representative for the ESTATE
OF FRANK SMITH, on behalf of the
Estate and Survivor Judith Walton,

        Plaintiff,

v.                                                      Case No. 3:16-cv-1130-J-39JRK

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.
_____

## ORDER

### I. Status

Before the Court is Plaintiff Judith Walton's Motion to Reconsider the Court's Order dismissing Counts I, II, and IV of the Second Amended Complaint (Doc. 46; Motion). Defendants have responded (Docs. 51, 52, 53). In the Second Amended Complaint (Doc. 33; SAC), Plaintiff, as personal representative of her deceased son, Frank Smith, asserted that Smith's constitutional rights were violated while he was in the custody of the Florida Department of Corrections (FDOC) at Union Correctional Institution (UCI). Plaintiff alleged that corrections officers used excessive force against Smith on July 3, 2012, which resulted in his death two months later. See SAC at 12.[1] This Court dismissed with prejudice Counts I, II, and IV of the SAC for Plaintiff's failure to file within the applicable

---

[1] The factual allegations are more fully set forth in the Court's Order. See Order (Doc. 42) at 2-5.

limitations period. See Order (Doc. 42; Dismissal Order). In those Counts, Plaintiff asserted claims under § 1983 for the violation of Smith's constitutional rights, including excessive use of force, failure to protect or intervene, deliberate indifference, and violations of the ADA and Rehabilitation Act. See SAC at 15, 17, 19, 20.

## II. Plaintiff's Motion

Plaintiff asks the Court to reconsider its Order on purely equitable grounds, citing Federal Rule of Civil Procedure 60(b)(1) or (b)(6), "to prevent manifest injustice." Motion at 1. Plaintiff maintains the statute of limitations should be calculated from the date of Smith's death for three reasons: (1) Florida's delayed discovery doctrine "operates to postpone accrual" of the claims until the date of Smith's death; (2) equitable tolling applies because Defendants fraudulently concealed the facts; and (3) Defendants should be equitably estopped from asserting a statute-of-limitations defense because of their wrongful acts. Id. at 1-2. Plaintiff also asserts that whether and when a plaintiff should have discovered a cause of action is a question of fact for a jury. See id. at 10.

Plaintiff contends that "Defendants failed to disclose facts that could have put the public, including the family of Plaintiff's decedent, on notice of the existence of a cause of action relating to [Smith's] death." Id. at 2. Plaintiff states that the "family was told that Smith had caused his own injuries," id. at 4-5, and Plaintiff and her daughter "were unable to get truthful information from the [FDOC] as long as Frank Smith was alive," id. at 3. Plaintiff offers the following exhibits in support: a Florida Department of Law Enforcement (FDLE) investigative report (46-1; FDLE Report),[2] her own declaration (Doc. 46-2; Judith

___

[2] According to the report, "Florida Governor Rick Scott . . . ordered the Florida Department of Law Enforcement (FDLE) to investigate a use of force involving [FDOC] inmate Frank

2

Declaration), her daughter Kimberly's declaration (Doc. 46-3; Kimberly Declaration); and an autopsy report dated September 4, 2012, the date of Smith's death (Doc. 46-4; Autopsy Report).

In their declarations, Plaintiff and her daughter aver under penalty of perjury that someone at the prison informed them that Smith "hurt himself by banging his head against something in the back of [a transportation] van." See Judith's Declaration ¶ 3; Kimberly's Declaration ¶ 4. They further aver that they were never told anything other than that Smith caused his own death, they were never allowed to speak with Smith alone, and when Kimberly visited Smith's hospital room, he was partially paralyzed and intubated, rendering him unable to communicate with her. See Kimberly's Declaration ¶ 5. Plaintiff first learned of the circumstances surrounding Smith's death when her attorney contacted her daughter in August 2016. See Judith's Declaration ¶ 6; Kimberly's Declaration ¶ 7; Motion at 11.[3]

The FDLE Report confirms Smith was paralyzed while in the hospital. On August 21, 2012, Senior Inspector E.J. Whatley interviewed Smith in his room at the Reception Medical Center (RMC). According to Whatley, Smith was "in a room by himself, lying in a bed, and paralyzed from the neck down." FDLE Report at 50. However, it is unclear the extent to which Smith, a mentally ill patient, was able to understand the events and communicate. Smith reportedly told Whatley that he injured himself while inside the van, though he was unable to recall later events. Id. at 27-28. The FDLE investigator listened

---

Smith . . . which occurred on July 3, 2012, by Corrections Officers at [UCI]." FDLE Report at 1.

[3] Plaintiff's attorney explains that he contacted Kimberly Walton "as part of the investigation of another [UCI] inmate beating case," which is what put Plaintiff on notice of the "questionable circumstances of her son's death." Motion at 11.

to the recording of the interview and noted that Smith sounded "oriented and lucid," though his speech was slurred. Id. at 27. Moreover, Whatley told the FDLE investigator that "Smith was having trouble communicating" when Whatley interviewed him. Id. at 51.

### III. Defendants' Responses

In response to Plaintiff's Motion, Defendants FDOC, Reddish, Jeffcoat, Swain, and Bacon argue that Plaintiff does not qualify for relief under Rule 60(b) (Doc. 51; FDOC Response). In the FDOC Response, Defendants assert that Plaintiff's failure to adequately present the facts and argument was due to a mistake on her attorney's part, which is "an insufficient basis for establishing excusable neglect." FDOC Response at 4. They also maintain that Plaintiff has not identified a change in the law or newly-discovered evidence but rather improperly offers facts and evidence she failed to present previously. Id. at 6-7. Finally, they argue Plaintiff's Motion represents an inappropriate "second bite at the apple." Id. at 11-12.[4] Defendant Criswell asserts many of the same arguments as those raised in the FDOC Response (Doc. 53; Criswell Response). Criswell also asserts that subdivisions (b)(1) and (b)(6) are mutually exclusive, meaning that a court cannot grant relief under (b)(6) for any reason the court could consider under (b)(1). See Criswell Response at 3.

### IV. Discussion

Recognizing that relief under Rule 60(b)(1) and (b)(6) are mutually exclusive, the Court finds that either subdivision provides a basis for the relief Plaintiff seeks. Rule 60(b) is a remedial rule and, as such, should be liberally construed. See Nisson v. Lundy, 975

---

[4] Defendants Allen, Griffis, Norman, Browning, Schaffer, and Hough adopt the FDOC Response. See Response (Doc. 52).

4

F.2d 802, 806 (11th Cir. 1992). "The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of the facts." Stansell v. Revolutionary Armed Forces of Colombia (FARC), No. 8:09-CV-2308-T-26MAP, 2013 WL 12132057, at *3 (M.D. Fla. Apr. 29, 2013) (citing Hesling v. CSX Transp., Inc., 396 F.3d 632, 638 (5th Cir. 2005)). See also Greater Baton Rouge Golf Ass'n v. Recreation & Park Comm'n for Par. of E. Baton Rouge, 507 F.2d 227, 229 (5th Cir. 1975) ("It is generally held that even where there may be evidence in the record which would call for dismissal, any doubt should be resolved in favor of a trial on the merits.").

Upon review, it appears there may be a factual dispute as to whether Smith knew his constitutional rights had been infringed. Contrary to the assertion in the FDOC Response, Plaintiff offers facts that, if proven, could demonstrate "Mr. Smith was not a person with a reasonably prudent regard for his own rights." See FDOC Response at 5 n.1 (citing Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003)). To the extent Smith had no recollection of much of the events of July 3, 2012, he may not have known or had reason to know of an infringement of his constitutional rights attributable to the actions of others. See Horsely v. Univ. of Ala., 564 F. App'x 1006, 1008 (11th Cir. 2014). If Smith himself was unable to understand or know his rights were infringed upon, he certainly could not have communicated any such violations to those who could champion his rights after his death. Even more, to the extent Defendants intentionally withheld information or misled Plaintiff as to the cause of her son's death, fairness dictates Plaintiff be afforded an opportunity to sufficiently present her arguments

as to whether she timely filed her claims considering all relevant facts and applicable legal and equitable principles.

Though Plaintiff provides more factual detail in her Motion than she offered before, Defendants' contention that Plaintiff's Motion raises new argument is not entirely accurate. In her Omnibus Response to Defendants' Motions to Dismiss (Doc. 37; MTD Response), Plaintiff did assert that the "delayed discovery" doctrine applies. See MTD Response at 15. As set forth in the Court's Dismissal Order, Plaintiff's reliance on Florida's delayed discovery rule was misplaced. See Dismissal Order at 16-17. However, under federal law, actions brought pursuant to § 1983 and the ADA accrue, or begin to run, "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Ross v. Mickle, 194 F. App'x 742, 744 (11th Cir. 2006).

If Plaintiff can prove that Smith "was not a person with a reasonably prudent regard for his own rights" or that there is a question of fact as to when the statute of limitations accrued, this case is factually distinguishable from the Tenth Circuit decision upon which this Court relied in finding Plaintiff's claims were time-barred as a matter of law. See Lawson v. Okmulgee Cty. Crim. Justice Auth., 726 F. App'x 685 (10th Cir. 2018). In Lawson, the Tenth Circuit held the state wrongful death statute did not apply because the plaintiff sued "in a purely representative capacity for alleged violations of [the inmate's] federal and state constitutional rights." Id. at 691. In Lawson, however, the Court noted that the "facts and dates [were] not disputed." Id. at 689. The parties merely disagreed as to what law dictated the limitations period and claim accrual. Id. Moreover, there was no suggestion in the Lawson case that the decedent himself was unaware of a potential

infringement of his constitutional rights, or that he suffered from a mental or physical disability that prevented him from communicating with his family. See id. at 691.

Because the facts in the instant matter demonstrate the parties dispute not only the applicable law but the date on which the claims accrued, the Court is inclined to revive Plaintiff's claims to permit the parties an opportunity to fully develop the facts and brief the issue on summary judgment. Cf. Ross, 194 F. App'x at 744 (affirming dismissal of the action because in his motion for reconsideration and amended complaint, plaintiff failed to offer facts indicating the limitations period should be tolled or "that he was under a disability that prevented him from timely filing").

To the extent Plaintiff is not entitled to relief under subdivision (b)(1) for "mistake, inadvertence, surprise, or excusable neglect," the Court finds in the alternative that subdivision (b)(6) justifies the relief she seeks under the circumstances.

> [Rule] 60(b) strongly indicates on its face that courts no longer are to be hemmed in by the uncertain boundaries of . . . common law remedial tools. In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.

Klapprott v. United States, 69 S. Ct. 384, 390 (1949). In Klapprott, the Court held the movant's failure to defend an action to revoke his citizenship was due to "an extraordinary situation" and not because of neglect on his part. Id. at 389. In that case, the movant was unable to defend the action because he was wrongfully imprisoned for over six years and, during that time, he was ill and unable to afford an attorney. Id. at 386-87. The Court found significant that "all [the movant] ha[d] asked [was] that the default judgment be set aside so that for the first time he may defend on the merits." Id. at 390. See also Nisson, 975 F.2d at 806 (recognizing that subdivision (b)(6) "is a 'catch-all' provision, and a 'grand

7

reservoir of equitable power to do justice in a particular case'"); Ritter v. Smith, 811 F.2d 1398, 1400 (11th Cir. 1987) (recognizing that a district court may exercise its discretion to grant extraordinary relief under Rule 60(b)(6) "in order to do justice."; In re Wyrick, No. 97-41559, 2001 WL 36401094, at *3 (Bankr. S.D. Ga. Feb. 5, 2001) (listing eight factors relevant to a court's consideration of a motion under subdivision (b)(6) and finding the most important factor to be whether the case was considered on the merits).

Given the gravity of the offenses Plaintiff alleges against Defendants, and that Plaintiff may be able to demonstrate she delayed filing her claims through no fault of her own, the Court finds that justice is best served by granting Plaintiff's Motion so the issue may be decided on the merits. Granting Plaintiff relief in this instance promotes the ends of justice and equity given that the accrual of the statute of limitations in claims raised by Plaintiff presents somewhat of a novel question of law and fact, and there is no apparent prejudice to Defendants. In granting the Motion, the Court does not conclude that Plaintiff has demonstrated as a matter of law that she timely filed her claims. However, equitable considerations move the Court to permit her an opportunity to amend her complaint to properly allege facts that, if proven, would demonstrate at least a question of fact as to whether her claims are timely.

Accordingly, it is

**ORDERED:**

1.   Plaintiff's Motion for Clarification regarding the Court's Dismissal Order (Doc. 45) is **GRANTED** to the extent the Court recognizes that Plaintiff re-filed the dismissed claims so as not to abandon them while the Court considered Plaintiff's Motion to Reconsider the Court's Dismissal Order.

2. Plaintiff's Motion to Reconsider the Court's Order Dismissing the Second Amended Complaint (Doc. 46) is **GRANTED** to the extent that Counts I, II, and IV of the SAC are not time-barred as a matter of law.

3. Plaintiff's Third Amended Complaint (Doc. 43) is **STRICKEN**. Plaintiff shall file an amended complaint within twenty days of the date of this Order.

4. Defendants' Motions to Dismiss (Docs. 47, 48, 49, 50) are **DENIED as moot**.

**DONE AND ORDERED** in Jacksonville, Florida, this 6th day of February, 2019.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c: Counsel of Record