UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JUDITH WALTON as Personal
Representative for the ESTATE OF FRANK
SMITH, on behalf of the Estate and Survivor
Judith Walton,

     Plaintiff,

v.                          CASE NO.: 3:16-CV-01130-BJD-JRK

FLORIDA DEPARTMENT OF
CORRECTIONS, WARDEN BARRY
REDDISH, NAN JEFFCOAT, MIKE
WILLIS, BEN GODWIN, LT. JOSEPH
ALLEN, CAPT.WILFRED ELLIS, CAPT.
SHAWN SWAIN, LT. TERRY BACON,
SGT. RODNEY CRISWELL, SGT.
BRANDI GRIFFIS, OFFICERS BRIAN
NORMAN, SHALEN BROWNING,
MICHAEL SCHAFFER, DUSTIN
HOUGH, in their individual capacities,

     Defendants.

_____/

## DEFENDANT SGT. RODNEY CRISWELL'S
## MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure ("Rule(s)"), Defendant, Sgt.

Rodney Criswell ("Criswell"), requests that this Court enter an Order dismissing the claims

against Criswell (Counts I, II, III and IV) in Plaintiff's Fourth Amended Complaint for failure to

state a claim upon which relief may be granted.  In support of this Motion, Criswell states:

## **INTRODUCTION**

This Court should dismiss Counts I, II, III and IV under Rule 12(b)(6) since Plaintiff fails

to state a claim upon which relief may be granted. First, relating to the allegations claiming a

violation of 42 U.S.C. § 1983, Counts III and IV should be barred by qualified immunity since Criswell was acting within the scope of his discretionary authority in transporting a prisoner, such as Smith, to UCI from Shands Hospital in Gainesville, FL. Any alleged actions of force were carried out only because of Criswell's employment with the FDOC and his job responsibilities to securely transport a prisoner. Criswell was performing his duties according to Florida law, and under the direction of the FDOC, in order to control the prisoner after he kicked out a window and became a threat to himself and potentially others.[1]  Further, the alleged discretionary use of force by Criswell did not violate Smith's clearly established constitutional rights. Therefore, the Fourth Amended Complaint fails to include sufficient factual allegations to survive a motion to dismiss based upon qualified immunity.

Furthermore, Count III fails to state a claim for conspiracy against Criswell. Plaintiff fails to provide any facts demonstrating an agreement or understanding between Criswell and any other defendant to deny Smith his constitutional rights. Mere labels and conclusions are not accepted as true when deciding a motion to dismiss. Criswell cannot be held responsible for simply performing his job while, at the same time, working at the same institution with seemingly no other connection to other defendants.

Likewise, the Court should dismiss with prejudice all of Plaintiff's state law claims against Criswell, including the wrongful death (Count I) and civil conspiracy (Count II) counts, because he is entitled to sovereign immunity under section 768.28(9)(a), Florida Statutes. Criswell was acting within the scope of his employment in Plaintiff's allegations. In fact, Criswell made discretionary decisions within his job duties and scope of employment in order to restrain Smith who was a danger to himself and potentially others. Furthermore, Count I must fail if Count IV (excessive force) fails. Similar to Count III, Plaintiff fails to state a claim in

---

[1] *See* Fourth Amended Complaint ¶ 38.

Count II for common law civil conspiracy. Likewise, it is also a derivative claim that should be dismissed with the other counts. Furthermore, notwithstanding the fact that Plaintiff has failed to state a claim in Counts II and III, the claims of conspiracy must necessarily still fail due to the intracorporate conspiracy doctrine.

## PROCEDURAL BACKGROUND

1.     Frank Smith ('Smith") was a prisoner at Union Correctional Institution ("UCI").[2]

2.     He was transported to Shands Hospital in Gainesville, FL, by Florida Department of Corrections ("FDOC") officers.[3]

3.     On July 3, 2012, Plaintiff alleges that Smith was being transported back from Shands Hospital in Gainesville, FL, to UCI when a dispute occurred that resulted in the use of force by FDOC officers.[4]

4.     Plaintiff alleges that Smith sustained injuries on July 3, 2012, that resulted in his death on September 4, 2012.[5]

5.     Plaintiff, as a survivor of Smith, filed the initial Complaint in this case on September 6, 2016.[6]

6.     On March 20, 2018, this Court dismissed Plaintiff's claims with prejudice related to Criswell holding that Plaintiff's claims were barred by the statute of limitations.[7]

7.     However, on June 5, 2018, Plaintiff filed a Motion to Reconsider which this Court also granted on February 6, 2019, providing Plaintiff leave to amend and file her Fourth Amended Complaint.[8]

---

[2] *See* dkt. 62, Fourth Amended Complaint (hereinafter, "Fourth Amended Complaint") at ¶¶ 20-22.
[3] *See* Fourth Amended Complaint at ¶¶ 28, 30.
[4] *See* Fourth Amended Complaint at ¶¶ 30-51.
[5] *See* Fourth Amended Complaint at ¶¶ 20, 162.
[6] *See* dkt. 1, Complaint.
[7] *See* dkt 42, Order on Motion to Dismiss.

8.     Plaintiff filed her Fourth Amended Complaint on February 26, 2019.

9.     The Fourth Amended Complaint contains six (6) separate counts. Criswell was named in four (4) counts with other individual defendants: Count I for Wrongful Death, Count II for Civil Conspiracy, Count III for Conspiracy in Violation of 42 U.S.C. § 1983, and Count IV for Excessive Force/Failure to Intervene in Violation of 42 U.S.C. § 1983.

10.    Counts I, II, III and IV, in which Criswell is a named a defendant, should be dismissed with prejudice for failure to state a claim against Criswell under Rule 12(b)(6).

## FACTUAL BACKGROUND

1.     Although Plaintiff attempts to group all the individual defendants into one group, the allegations show that there were two very distinct periods of the alleged fact pattern: 1) the transport of Smith from Shands to UCI; and 2) the alleged "brutal" beating in the UCI Movement Center.

2.     The allegations show that Criswell had no tangible role in the actions at the UCI Movement Center.

3.     The Fourth Amended Complaint alleges that Criswell was a "Transport Officer" employed by FDOC.[9]

4.     Furthermore, the Fourth Amended Complaint alleges that Criswell, Officer Dustin Hough ("Hough"), and Sgt. Eric Cagle ("Cagle"), acting as officers of the FDOC, transported Smith from Shands Hospital in Gainesville, FL, back to UCI.[10]

5.     Plaintiff alleges that while transporting the prisoner in a van, "Smith lay [sic] on his back and began kicking a passenger window" and "managed to break the glass."[11]

---

[8] *See* dkt 61, Order Granting Plaintiff's Motion for Clarification and Motion to Reconsider the Court's Order Dismissing the Second Amended Complaint, Striking Plaintiff's Third Amended Complaint and Denied as moot Defendant's Motion to Dismiss.
[9] *See* Fourth Amended Complaint ¶ 30.
[10] *See* Fourth Amended Complaint ¶¶ 30, 35-36.

6.      As a result of Smith's actions and behavior, Criswell was worried, right or wrong, that Smith might break through the metal grate and escape.[12]

7.      Likewise, the Criswell stated that Smith was banging his head on the window divider causing injuries to himself.[13]

8.      As the Fourth Amended Complaint explains, Smith's mental health was of great concern because "Smith was a paranoid schizophrenic" and "heard voices he called Sam and Henry and spoke to them often."[14]

9.      The Fourth Amended Complaint states that Smith was "severely mentally ill" and "told his mental health counselors that Sam was his guide."[15]

10.     Smith was in the hospital because of an overdose on drugs he was prescribed.[16]

11.     Smith even urinated himself before entering the van.[17]

12.     According to hospital staff at Shands, Smith seemed confused and followed commands "on and off" and thought the year was 2002.[18]

13.     As a result, when Smith broke the window and acted in a threatening behavior to himself and potentially others, Criswell decided to stop the van to restrain Smith as he continued to struggle and kick the window.[19]

14.     Criswell utilized a taser to restrain and calm Smith in the van.[20]

---

[11] *See* Fourth Amended Complaint ¶¶ 38-40.
[12] *See* Fourth Amended Complaint ¶ 39.
[13] *See* Fourth Amended Complaint ¶ 51.
[14] *See* Fourth Amended Complaint ¶¶ 22-24, 147.
[15] *See* Fourth Amended Complaint ¶¶ 22-25.
[16] *See* Fourth Amended Complaint ¶ 28.
[17] *See* Fourth Amended Complaint ¶ 33.
[18] *See* Fourth Amended Complaint ¶ 29.
[19] *See* Fourth Amended Complaint ¶ 38-40, 42, 49.
[20] *See* Fourth Amended Complaint ¶ 49-52.

15.     Plaintiff alleges that Criswell stated, under oath to a Florida Department of Law Enforcement ("FDLE") agent conducting a second investigation of the incident, that he did not strike Smith.[21]

16.     However, Plaintiff alleges that there were several knee strikes to Smith and also alleges that Criswell testified under oath that he did not strike Smith.[22]

17.     Plaintiff does not allege that Criswell struck Smith in the head. In fact, Plaintiff alleges that "Smith had no visible injuries to his head" following the incident in the transport van.[23]

18.     Following the incident, Plaintiff alleges that Criswell called Captain Wilfred Ellis ("Ellis") alerting him of the incident.[24]

19.     Criswell rode with Smith in the prisoner compartment to UCI.[25]

20.     Smith walked out of the van conscious and able to walk although he was "unsteady on his feet" due to being tased and kicking the grated window.[26]

21.     Hough and Cagle, the only witnesses to the event, told investigators under oath that they did not see Criswell strike Smith's head and did not see any injuries to Smith's head as he exited the van.[27]

---

[21] *See* Fourth Amended Complaint ¶¶ 50-53, 145(i)v.
[22] *See* Fourth Amended Complaint ¶ 145(i)iv.
[23] *See* Fourth Amended Complaint ¶ 145(i)vi; Plaintiff does insinuate a contradiction in ¶122 stating that, due to his autopsy, "Smith's injuries were inconsistent with the description of his exiting the van with no visible head injuries" although Plaintiff alleges that the beating in the Movement Center was "brutal" in ¶123. Plaintiff does not specifically distinguish which injuries she believes were due to each incident. However, she does not specifically allege that Criswell struck Plaintiff's head at any point in the Fourth Amended Complaint.
[24] *See* Fourth Amended Complaint ¶ 54.
[25] *See* Fourth Amended Complaint ¶ 55.
[26] *See* Fourth Amended Complaint ¶ 64.
[27] *See* Fourth Amended Complaint ¶¶ 50-53, 145(i)v.

22.     Criswell had no further contact or interaction with Smith at the Movement Center after he was taken from the transport van although later Criswell did see Smith in a wheelchair being taken from the holding cell in the Movement Center to the infirmary.[28]

23.     Plaintiff alleges that there was a "substantial and brutal" use of force against Smith in the holding cell at the Movement Center.[29]

24.     As a result, Smith died of his injuries two months later on September 4, 2012.[30]

## MEMORANDUM OF LAW

### A.     Standard for a Motion to Dismiss.

Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, the factual allegations made in a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means that a plaintiff has an obligation to provide a basis or grounds for relief, and a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In that regard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and if a plaintiff "ha[s] not nudged his claims across the line from conceivable to plausible, his complaint must be dismissed." *Id.* at 570.

In addition, "[d]ismissal is warranted under [Rule] 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief." *Schwab v. Huntington Nat'l Bank*, No. 2:12-cv-315-FtM-99SPC, 2013 WL 655248, at *1 (M.D. Fla. Feb. 22, 2013). A court may grant a motion to dismiss if the defendant

---

[28] *See* Fourth Amended Complaint ¶¶ 62, 71.
[29] *See* Fourth Amended Complaint ¶ 123.
[30] *See* Fourth Amended Complaint ¶ 162.

demonstrates beyond a doubt that the plaintiff will be unable to prove any set of facts that would entitle the plaintiff to relief for her claim. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (citations omitted).

**B.      Count III (§ 1983 Conspiracy) and Count IV (§ 1983 Excessive Force/Failure to Intervene) should be dismissed with prejudice because they are barred by qualified immunity.**

Qualified immunity "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lawson v. City of Miami Beach*, 908 F. Supp. 2d 1285, 1289 (S.D. Fla. 2012) (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010)). "Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct violates clearly established constitutional rights of which a reasonable person would have known." *Woodring v. Hart*, No. 614-cv-1067-Orl-37TBS, 2015 WL 2238056, at *2 (M.D. Fla. May 12, 2015) (citing *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010)). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Carter v. DeKalb Cnty., Ga.*, 521 F. App'x 725, 728 (11th Cir. 2013) (citation and internal quotation marks omitted). "Thus, unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.*

**1.      Criswell was acting within the scope of his discretionary authority.**

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts

occurred." *Orta v. City of Orlando*, No. 6:14-cv-1835-Orl-41GJK, 2015 WL 2365834, at *2 (M.D. Fla. May 18, 2015) (citation omitted). "To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004). "A government official proves he acted within his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *McKally v. Perez*, 87 F. Supp. 3d 1310, 1314 (S.D. Fla. 2015) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)); "The remaining burden is on Plaintiff." *Orta*, 2015 WL 2365834, at *2. "The scope-of-employment inquiry is whether the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010).

Criswell was a "Transport Officer" employed by FDOC.[31] His employment and job responsibilities were to ensure the secure transport of a prisoner. This involves an objective duty to keep the public safe, especially when a dispute with a prisoner occurs. As a result of Smith's conduct on the transport of Smith from Shands to UCI, Criswell decided, within the scope of his employment and job responsibilities, to stop the van to restrain Smith and inspect the damage to the broken window and van.[32] Smith was not "compliantly restrained" as he struggled to kick out the window. *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1292 (11th Cir. 2009). "[T]his was precisely the type of situation where the decisions of the officers confronted with "circumstances that are tense, uncertain, and rapidly evolving" should not be second-guessed. *Id.*

---

[31] *See* Fourth Amended Complaint ¶ 30.
[32] *See* Fourth Amended Complaint ¶ 48.

(quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Criswell's actions were a result of his discretion with a very mentally ill and dangerous inmate and as a result of Criswell's employment with the FDOC. His decision was part of his discretionary authority and job responsibilities to securely transport the prisoner, Smith, in order to keep the public and the prisoner safe. *See McKally*, 87 F. Supp. 3d at 1314 (noting the parties did not dispute that an officer was acting within the scope of his discretionary authority when placing an individual under arrest); *see Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (holding that where a security measure is undertaken to resolve a disturbance that indisputably poses risks to people's safety, the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm). Likewise, Criswell, in the scope of his employment and job responsibilities, reported the incident to Captain Ellis.[33]

Nevertheless, the issue at hand is not whether the allegations provided show Criswell's decisions were necessarily all correct, but that his discretion was used pursuant to the performance of Criswell's duties and within the scope of his authority and employment with FDOC. Therefore, because Plaintiff's allegations show that Criswell was within the scope of his discretionary authority, the burden is on Plaintiff to sufficiently allege that Criswell's conduct amounted to a constitutional violation of clearly established law.

    **2.**    **The Fourth Amended Complaint fails to clearly establish the violation of Plaintiff's constitutional rights by Criswell.**

"[T]o survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established

---

[33] *See* Fourth Amended Complaint ¶ 54.  This is the only allegation against Criswell that relates to Count III.

law." *Woodring v. Hart*, No. 614-cv-1067-Orl-37TBS, 2015 WL 2238056, at *2 (M.D. Fla. May 12, 2015).  Moreover, "this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." *Keating v. City of Miami*, 598 F.3d 753, 762-63 (11th Cir. 2010).  "Thus, a plaintiff must allege some factual detail as the basis for a § 1983 claim." *Id.* at 763.

Specifically to Criswell, the Fourth Amended Complaint fails to allege sufficient facts of a constitutional violation of a clearly established law to survive a motion to dismiss based on qualified immunity.  "A right is clearly established if the officer – at the pertinent time and given the specific circumstances of this case – had fair notice that [his] conduct would violate clear federal law." *Williams v. Morahan*, 539 F. App'x 934, 937 (11th Cir. 2013) (citations and internal quotation marks omitted).  "The right must be clear enough that any reasonable officer would understand that what he is doing violates that right." *Carter v. DeKalb Cnty., Ga.*, 521 F. App'x 725, 728 (11th Cir. 2013).  "In other words, officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Gibbons v. McBride*, No. CV 114-056, 2015 WL 5017021, at *5 (S.D. Ga. Aug. 21, 2015) (citation and internal quotation marks omitted).

Plaintiff alleges in both Count III and Count IV that she is "entitled to relief against Criswell … for violation of the Eighth Amendment."[34]  However, this statement is simply a mere conclusion while Plaintiff's allegations do not show a clear violation of the Eighth Amendment by Criswell to satisfy Plaintiff's burden in both Count III and IV.[35]  In this analysis, only the allegations that relate to Criswell, specifically the transport of Smith from Shands to UCI are relevant.

---

[34] *See* Fourth Amended Complaint ¶¶ 186, 195.
[35] *See* Fourth Amended Complaint ¶ 31.

As stated above, the Fourth Amended Complaint does not include allegations that Criswell's actions constituted a *clear* violation of Smith's Eighth Amendment constitutional rights. Even if Criswell did strike Smith with his knee and it was "not … entirely necessary", the conduct was not "so violent and harsh to be considered an egregious violation of a constitutional right, and [the conduct is] not an obstacle to the application of qualified immunity." *Lewis*, Fla., 561 F.3d at 1292. "Thus, only if the officers' conduct was so egregious and unacceptable so as to have blatantly violated the Constitution would qualified immunity be unavailable to them." *Id*. "Plaintiff must show that the official's conduct was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without case law on point." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997). Concerning Criswell and his alleged actions, Plaintiff cannot meet such a high burden of showing an egregious, clear violation of a constitutional right.

Following Smith's alleged interactions with Criswell, Smith walked out of the van conscious and able to walk although he was "unsteady on his feet."[36] Smith was "escorted" into the UCI Movement Center and placed in a holding cell.[37] Plaintiff alleges that Smith was injured as a result of alleged "substantial and brutal" force from officers in the UCI Movement Center.[38] Plaintiff alleges Smith was found collapsed with blood flowing from his head.[39] The Fourth Amended Complaint then alleges that Smith eventually died two months later.[40] Based on Plaintiff's Fourth Amended Complaint, it appears that Plaintiff alleges the conduct in the UCI Movement Center caused Smith's death.[41] From the Movement Center he was unconsciously

---

[36] *See* Fourth Amended Complaint ¶ 64.
[37] *See* Fourth Amended Complaint ¶ 74.
[38] *See* Fourth Amended Complaint ¶ 123.
[39] *See* Fourth Amended Complaint ¶ 79, 162.
[40] *See* Fourth Amended Complaint ¶ 162.
[41] *See* Fourth Amended Complaint ¶ 79, 162

placed in a wheelchair and taken to the infirmary.[42] Plaintiff alleges that other FDOC officers heard there was a use of force on Smith inside the Movement Center and that another officer stated that he "kicked that fuck-boy's ass" while in the Movement Center cell.[43] However, Plaintiff does not allege Criswell was part of the alleged beating in the Movement Center, holding cell or even present at the time of the incident other than to witness him being taken in a wheelchair to the infirmary after the alleged incident in the Movement Center occurred.[44]

Criswell's role in the Fourth Amended Complaint related to any alleged excessive force focuses on the restraining of Smith after breaking the van window. Likewise, Criswell's role in a conspiracy is unclear.  Again, officials are "not liable for bad guesses in gray areas" but only for "transgressing bright lines." However, Plaintiff does not allege that Criswell transgressed any bright lines of constitutional rights.

In fact, Plaintiff alleges that FDOC conducted an investigation through its Inspector General's Office[45] and that a subsequent investigation occurred conducted by the FDLE.[46] After the investigation was completed, Criswell was suspended for 40 hours as a result of breaking protocol by entering the prisoner compartment.[47] Likewise, the State Attorney reviewed the investigations and declined prosecution.[48] Nevertheless, as Plaintiff alleges, Criswell was a transport officer who is now a sergeant with FDOC following the investigations completed by both the Inspector General's office, the Florida Department of Law Enforcement and the State Attorney's Office.[49]

---

[42] *See* Fourth Amended Complaint ¶¶ 87, 145.
[43] *See* Fourth Amended Complaint ¶¶ 82-83.
[44] *See* Fourth Amended Complaint ¶¶ 66-74.
[45] *See* Fourth Amended Complaint ¶ 98.
[46] *See* Fourth Amended Complaint ¶ 110.
[47] *See* Fourth Amended Complaint ¶ 46.
[48] *See* Fourth Amended Complaint ¶ 191.
[49] *See* Fourth Amended Complaint ¶¶ 11, 30.

Therefore, the Fourth Amended Complaint contains only bare legal conclusions and fails to allege sufficient facts to overcome qualified immunity in support of § 1983 claims against Criswell. Thus, Counts III and IV should be dismissed with prejudice.

C.   **Plaintiff fails to state a plausible claim for Count II (Common Law Civil Conspiracy) and Count III (§ 1983 conspiracy) against Criswell.**

1.   **Count III (§ 1983 Conspiracy) fails to state a plausible claim.**

"To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The rule requires sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Id.* at 556. "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 555. "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* Additionally, the plaintiff must show "an underlying actual denial of [his] constitutional rights." *Hadley*, 526 F.3d at 1332. "The plaintiff does not have to produce a smoking gun to establish the understanding or willful participation required to show a conspiracy, but must show some

evidence of agreement between the defendants." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002).

As such, to allege a conspiracy, a plaintiff must make "particularized allegations" that are more than vague or conclusory. *Burge v. Ferguson*, 619 F. Supp. 2d 1225 (M.D. Fla. 2008) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998) (overruled in part on other grounds). For purposes of § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy and agreement between the alleged actors. *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Therefore, merely "stringing together" alleged adverse acts of individuals are also insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Plaintiff has once again "done no more than generally aver the existence of a conspiracy, both prior to the alleged use of force and in the hours following." *Walton for Estate of Smith v. Fla. Dep't of Corr.*, No. 3:16-CV-1130-J-39JRK, 2018 WL 1393520, at *8 (M.D. Fla. Mar. 20, 2018), on reconsideration in part, No. 3:16-CV-1130-J-39JRK, 2019 WL 462844 (M.D. Fla. Feb. 6, 2019). Plaintiff only makes conclusory allegations in Count III including: "Each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity"[50] and "Defendants conspired to do an unlawful act by unlawful means and each Defendant engaged in overt acts in furtherance of the conspiracy." Similar to the claim for conspiracy in the Second Amended Complaint dismissed by this Court, Plaintiff provides a laundry list of conclusory allegations against all the "Defendants" making it impossible for Defendant Criswell to understand the nature of the conspiracy or his role in the alleged conspiracy.[51]   Plaintiff's

---

[50] *See* Fourth Amended Complaint at ¶¶ 178, 188.
[51] *See* Fourth Amended Complaint at ¶ 145(a-h).

allegations do not provide a factual basis to sustain a claim for conspiracy against Criswell. Plaintiff fails to provide any allegations demonstrating an explicit agreement or understanding to deny Smith his constitutional rights or commit an unlawful act. Plaintiff alleges that Criswell called Ellis alerting him of the incident in the van.[52]  Plaintiff ambiguously alleges that Criswell and Ellis "arranged to teach Smith a lesson once they returned to UCI."[53] There are no allegations concerning what that means specific to Criswell. Mere labels and conclusions are not accepted as true when deciding a motion to dismiss. Plaintiff does not provide any additional allegations related specifically to Criswell's role in the alleged conspiracy.

Instead, Plaintiff discusses a "systemic issue" that happened "[b]efore and since this incident" while confusingly grouping "Defendants" who "have cooperated to permit" issues unrelated to the instant matter.[54] Criswell cannot be held responsible for simply performing his job while, at the same time, working at the same institution with other defendants but seemingly having no other alleged connection to one another. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (stating that federal courts should not become the primary arbiters of what constitutes the best solution to every administrative problem and that such a policy would unnecessarily perpetuate the involvement of the federal courts in affairs of prison administration). Plaintiff strings together vague allegations against "Defendants" without the necessary specificity for § 1983 litigation. Furthermore, the allegations made against Criswell do not rise to a clear violation of a constitutional right. Therefore, as Plaintiff's vague, confusing and conclusory allegations in her Fourth Amended Complaint do not support her claim against Criswell, the conspiracy claim against Criswell is not plausible and should be dismissed with prejudice.

---

[52] *See* Fourth Amended Complaint at ¶ 54.
[53] *See* Fourth Amended Complaint at ¶ 145(i)(ix).
[54] *See* Fourth Amended Complaint at ¶¶ 130, 138.

2.      **Count II (Common Law Civil Conspiracy) fails to state a plausible claim and should be dismissed with prejudice.**

To plead a claim for civil conspiracy under Florida law, a plaintiff must establish the following four elements: "(1) an agreement between two or more parties (2) to do an unlawful act by unlawful means, (3) the committing of an overt act in pursuance of the conspiracy, and (4) damage to the plaintiff as a result of the act." *Vista Mktg., LLC v. Burkett*, 999 F. Supp. 2d 1294, 1297 (M.D. Fla. 2014) (quoting *Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, 590 F. Supp. 2d 1364, 1368 (M.D. Fla. 2008)).

Plaintiff fails to state a claim upon which relief may be granted. Plaintiff only makes conclusory allegations in Count II including: "[e]ach of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity"[55] and "Defendants conspired to do an unlawful act by unlawful means and each Defendant engaged in overt acts in furtherance of the conspiracy."[56] These allegations are conclusory in nature and an exact replica of the allegations in Count III. Likewise, similar to the claims for § 1983 conspiracy in Count III, Plaintiff incorporates a laundry list of conclusory allegations against all the "Defendants" making it impossible for Criswell to understand the nature of the civil conspiracy or his role in the alleged civil conspiracy.[57] Plaintiff's allegations do not provide a basis to sustain a claim for conspiracy against Criswell.

Plaintiff fails to provide any allegations demonstrating an explicit agreement or understanding to deny Smith his constitutional rights or commit an unlawful act. Plaintiff alleges that Criswell called Ellis alerting him of the incident in the van.[58] Plaintiff ambiguously alleges

---

[55] *See* Fourth Amended Complaint at ¶ 178.
[56] *See* Fourth Amended Complaint at ¶ 183.
[57] *See* Fourth Amended Complaint at ¶ 145.
[58] *See* Fourth Amended Complaint at ¶ 54.

that Criswell and Ellis "arranged to teach Smith a lesson once they returned to UCI."[59] Likewise, Plaintiff provides no allegations specific to Criswell related to an overt act he may have taken in furtherance of an alleged conspiracy. In fact, there are very few allegations related to Criswell after Smith was taken into the UCI Movement Center. Most of the remaining allegations are simply conclusory and applied to all individual defendants. Mere labels and conclusions are not accepted as true when deciding a motion to dismiss. Plaintiff does not specifically provide any additional allegations related to Criswell's role in the alleged conspiracy.

Likewise, Plaintiff argues that, in the alternative, Florida law recognizes an independent cause of action for conspiracy by coercion, without the need to plead an actionable wrong, when "the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess . . . " *Churruca v. Miami Jai–Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977). Under this exception, the "conduct complained of would not be actionable if done by one person, but by reason of force of numbers or other exceptional circumstances, the defendants possess some peculiar power of coercion, which gives rise to an independent tort of conspiracy, sometimes referred to as an 'economic boycott.'" *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1148 (M.D. Fla. 2007) (quoting *Am. Diversified Ins. Servs., Inc. v. Union Fid. Life Ins. Co.*, 439 So. 2d 904, 906 (Fla. 4th DCA 1983)). "The essential elements of this tort are a malicious motive and coercion through numbers or economic influence." *Id.* In order to have an actionable claim, the defendants' concerted action must result in different or larger damages than could have been accomplished by the individual conspirators on their own. *Kee v. Nat'l Reserve Life Ins., Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990) (Plaintiff sought to recover under a civil conspiracy theory

---

[59] *See* Fourth Amended Complaint at ¶ 145.

that several companies acted in concert to destroy the plaintiff's business by informing the state commissioner of his alleged wrongdoings and thus causing him to be investigated).

However, the cases cited are all related to economic coercion of some sort, in a claim also called an "economic boycott," and should not apply to the instant matter. *See Snipes v. West Flagler Kennel Club, Inc.*, 105 So. 2d 164 (Fla. 1958) (track owners boycotted one particular owner of greyhounds and forced other owners to do the same). "The result of the defendants' concerted action must be different from anything that could have been accomplished separately." *Kee*, 918 F.2d at 1542. Nevertheless, Plaintiff only asserts conclusory allegations regarding this alternative theory. Plaintiff also fails to make out a *prima facie* case by not alleging that concerted action resulted in different or larger damages than could have been accomplished by the alleged individual conspirators on their own. The theory relies upon such an allegation. There does not seem to be any court that has applied this legal theory to anything outside of business disputes.

Therefore, as Plaintiff's vague, confusing and conclusory allegations in her Fourth Amended Complaint do not support her claim against Criswell, the civil conspiracy claim against Criswell should be dismissed with prejudice.

### D.   Count I against Criswell for wrongful death under § 768.19, Florida Statutes, and Count II (Common Law Civil Conspiracy) should be dismissed with prejudice.

Plaintiff includes new state claims in the Fourth Amended Complaint including wrongful death (Count I) and common law civil conspiracy (Count II) which was discussed above. The Florida Wrongful Death Act permits a cause of action "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person ..., and the event would have entitled the person injured to maintain an action and recover damages if death

had not ensued." Fla. Stat. § 768.19. According to the Act, a wrongful death action "shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in [the] act, caused by the injury resulting in death." Id. § 768.20.

### 1. Count I should be dismissed because Criswell is immune to state law claims under § 768.28(9)(a), Florida Statutes.

First, the Court should dismiss with prejudice all of Plaintiff's state law claims against Criswell, including Count I for wrongful death, because he is entitled to sovereign immunity under section 768.28(9)(a), Florida Statutes. "Generally, courts are reluctant to strip officers of their immunity under section 768.28(9)(a) of the Florida Statutes." *Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1344 (M.D. Fla. 2017). "As such, a threadbare recital that a defendant 'acted maliciously and in bad faith is conclusory' and insufficient." *Id.* (quoting *Brivik v. Law*, 545 Fed.Appx. 804, 806 (11th Cir. 2013)). Although Plaintiff alleges in a vague and conclusory manner that "[t]he above-named Defendants all acted under color of law, but not within the scope of their employment but willfully and wantonly for their own purpose,"[60] as discussed previously, the totality of the allegations show that Criswell was acting within the scope of his employment. Likewise, Criswell made discretionary decisions in order to restrain Smith who was a danger to himself and potentially others. As a result, the Court should dismiss the state claims with prejudice as Criswell is immune to such claims.

### 2. Because the underlying tort under Plaintiff's § 1983 claims should be dismissed, Count I should be dismissed with it.

Likewise, in her allegations, Plaintiff incorporates all the "Common Allegations of Fact" into the count. However, the allegations within the count are scarce and vague. The Plaintiff fails to provide proper notice of the specific intentional tort alleged against Criswell. Plaintiff alleges

---

[60] *See* Fourth Amended Complaint ¶ 173.

that she is entitled to relief against Criswell "for causing the death" of Smith. However, the Plaintiff's allegations do not support that Criswell was the but-for "cause" of Smith's dead.

Even if this Court adopts that the excessive force claims or conspiracy claims under 42 U.S.C. § 1983 provide the underlying tort for the wrongful death claim, Plaintiff's § 1983 claims should be dismissed against Criswell resulting in the dismissal of the wrongful death count as well. *See Estate of Bashimam v. City of Tallahassee*, No. 4:10CV343-RH/WCS, 2011 WL 13232538, at *2 (N.D. Fla. Mar. 11, 2011) ("When a person dies as the result of a constitutional violation in Florida, the personal representative may recover under—on behalf of the estate and survivors—the damages authorized by the Florida wrongful-death statute."). Therefore, Count I for wrongful death should be dismissed with prejudice.

3.     **Count II (common law civil conspiracy) should be dismissed with prejudice because it is barred by sovereign immunity or should fail with the tort it arises out of.**

Florida does not recognize an independent cause of action for civil conspiracy. *Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1360–61 (S.D. Fla. 2002). Rather, civil conspiracy is a derivative action that arises out of an independent actionable claim. *Id.* Accordingly, "a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim." *Id.* Because all other claims should be dismissed, and civil conspiracy is not an independent cause of action, Count II should be dismissed as well. Furthermore, as discussed previously, the Court should dismiss with prejudice all of Plaintiff's state law claims against Criswell under section 768.28(9)(a), Florida Statutes. Therefore, the civil conspiracy claim against Criswell should be dismissed with prejudice.

E.     **Count II (Common Law Civil Conspiracy) and Count III (§ 1983 Conspiracy) should be dismissed with prejudice due to the intracorporate conspiracy doctrine.**

Furthermore, notwithstanding earlier arguments that the Plaintiff has not presented sufficient facts to support her conspiracy claims, the claims must necessarily still fail due to the intracorporate conspiracy doctrine. *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). The doctrine of intracorporate conspiracy states, "that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id.* Therefore, a corporation and its employees are considered to be "a single legal actor." *Id.* The doctrine does not bar "convictions involving criminal charges of conspiracy," where the employee has an "independent personal stake" in the unconstitutional acts, and where the employees "engage in a series of discriminatory acts as opposed to a single action over a significant period of time in the employment setting." *See Grider v. City of Auburn*, 618 F.3d 1240, 1262 (11th Cir.2010). Florida also recognizes the intracorporate conspiracy doctrine, which "stems from basic agency principles that attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." *George & Co. LLC v. Spin Master Corp*, No. 218CV154FTM38MRM, 2018 WL 5268754, at *5 (M.D. Fla. Sept. 13, 2018) (citing *Mancinelli v. Davis*, 217 So. 3d 1034, 1036-37 (Fla. 4th DCA 2017).

The intracorporate conspiracy doctrine applies to Criswell's employment relationship with the FDOC, his relationship with Captain Ellis, along with other alleged conspirators within FDOC and bars the Plaintiff's conspiracy claims. Plaintiff did not plausibly allege that "Defendants" are independent entities that were capable of conspiring to commit common law fraud as alleged. The Fourth Amended Complaint does not allege "convictions involving

criminal charges of conspiracy" and provides insufficient allegations to meet any exception to the doctrine. Accordingly, Count II (common law civil conspiracy) and Count III (§ 1983 conspiracy) against Criswell should be dismissed with prejudice under the intracorporate conspiracy doctrine.

### CONCLUSION

Based on the foregoing, Defendant, Sgt. Rodney Criswell, requests that the Court enter an Order dismissing Counts I, II, III and IV of the Fourth Amended Complaint with prejudice.

Dated this 12th day of March, 2019.

Respectfully submitted,

ALEXANDER DEGANCE BARNETT, P.A.

By: _____
Mark G. Alexander
Florida Bar No. 434078
E-mail: mark.alexander@adblegal.com
David E. Chauncey
Florida Bar No. 0119497
E-mail: david.chauncey@adblegal.com
E-mail: mailbox@adblegal.com
1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile

*Attorneys for Defendant, Sgt. Rodney Criswell*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of this filing to James V. Cook, Law Office of James V. Cook, 314 W Jefferson St., Tallahassee, FL 32301 (cookjv@gmail.com), Michael Price, Vernis and Bowling of North Florida, P.A., 4309 Salisbury Rd, Jacksonville, FL 32216 (mprice@florida-law.com), and  Sean Michael Conahan, Fulmer LeRoy & Albee, PLLC, 11300 4th St. N Ste 100, St. Petersburg, FL, 33716 (sconahan@fulmerleroy.com).

ATTORNEY